IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RAMON MOYA,[1]

        Plaintiff,

v.                                                      CIV 02-972 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

# **MEMORANDUM OPINION AND ORDER**

      Plaintiff Ramon Moya was born on November 6, 1946 and has a GED. After working for twenty-seven years, at age forty-six he retired from his position as a maintenance repairman with the City of Albuquerque in 1993. *See e.g., Administrative Record* ("Record") at 35-36, 39. Moya has not worked since.

      Plaintiff filed for benefits on two prior occasions based on a heart condition and associated symptoms. He alleged a disability onset date of April 7, 1995, the same week he underwent quadruple bypass surgery. *See id.* at 61 (1995 application), 121-122 (hospital discharge summary of condition and procedures), 269 (1996 application). Both applications were denied and not pursued through the Appeals Council level. *See id.* at 89, 456-62.

      Moya's third application for benefits, filed in March 1998, is the subject of this action. There he alleged an onset date of November 24, 1997. *Id.* at 420 (1998 application). At the

---

[1] Throughout the Administrative Record, Plaintiff's name appears as "Ramon," "Raynond," "Raymond," and "Jose R." To avoid confusion, I use the name that appears in the caption to this suit.

hearing, Plaintiff could not recall why he chose that as the onset date. The medical records indicate, however, that this date is approximately one week before Plaintiff was again hospitalized for increasing chest pain. He underwent an angioplasty with stent placement to repair two grafts from the bypass surgery, which were completely occluded, and to open a third artery. *See id.* at 40-41, 467-74.

The date of Plaintiff's last insured status was June 30, 1999. Because the prior applications are not at issue, the issue before Administrative Law Judge ("ALJ") Gerald R. Cole was whether Plaintiff established that he was disabled between November 24, 1997 and June 30, 1999. *Id.* at 19. ALJ Cole found that Plaintiff could perform simple and repetitive light work with certain other limitations. Thus, aided by the testimony of a vocational expert, ALJ Cole found that Moya could perform work such as cashier, coin machine collector, food deliverer, ware cleaner and cleaner-housekeeper. Thus, ALJ Cole found Plaintiff not disabled at Step 5 of the analysis. *Id.* at 22-23. The Appeals Council declined review on July 2, 2002, thereby rendering the ALJ's decision final. *See id.* at 8.

This matter is before the Court on Plaintiff's Motion to Reverse or Remand, where he asserts that the ALJ committed four errors. *See Docs. 8, 9.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. The entire voluminous record has been read and carefully considered. I find that two interrelated issues are dispositive, and remand the matter to the Commissioner for further proceedings.

### I. Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were

applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

### III.  Analysis

#### A.  *Listings Finding Fails To Discuss Any Medical Evidence From Plaintiff's Treating Physicians For The Relevant Period*

It is legal error for an ALJ to fail to "discuss the evidence he accepted or rejected with respect to the requirements of [a] Listing." *Drepeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Failure to discuss the evidence or the reasoning results in a "bare conclusion [that] is beyond meaningful judicial review." *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996); *see also e.g., Malakowsky v. Barnhart,* 66 Fed. Appx. 756, 757-58 (10th Cir. 2003). The paragraph where ALJ Cole evaluates whether Plaintiff met a listing provides:

> The claimant's impairments, singly or in combination, have not met or equaled in severity any disorder set forth in the Listing of Impairments, Subpart P, Appendix 1, Social Security Regulation No. 4. Specifically, the medical and psychological consultants of record have not identified any impairment or combination of impairments fulfilling this test. I have independently reviewed the impairments of record under Section 4.01 and 12.04 and am persuaded that they fall short of listings-level severity. The

> claimant does not have the significant physical limitations, functional limitations, or laboratory findings to comport with the requirements of the listing.

*Id.* at 19-20.

Plaintiff argues that this listings finding is conclusory and does not discuss the medical evidence. Thus, there is no indication that the ALJ undertook the independent review of the medical records he claims to have performed and instead, would appear that ALJ Cole simply relied on the conclusions of "the consultants hired by Social Security." *Doc. 9* at 9. In his memorandum in support, Plaintiff contends that while ALJ Cole stated that he considered Listing § 4.01 because of Plaintiff's history of heart problems, ALJ Cole should have specifically evaluated Plaintiff's condition under Listing § 4.00 (B)(2) (defining "cardiovascular impairment" as resulting from "[d]iscomfort or pain due to myocardial ischemia, with our without necrosis of heart muscle"), and Listing § 4.04 (ischemic heart disease), and in Plaintiff's reply Listing § 4.05 (recurrent arrhythmia). *See Doc. 9* at 9; *Doc. 13* at 1. I reach a similar conclusion and find reversible error at Step 3.

Defendant correctly notes that an ALJ need not discuss every "bit of evidence." Nevertheless, I cannot agree with Defendant's characterization that ALJ Cole "thoroughly" discussed the evidence at pages 21 through 23 of his opinion per the page numbering in the Record. *See Doc. 12* at 5. I recognize that at Step 2, ALJ Cole found that Plaintiff has the "severe" impairment of "arteriosclerotic heart disease, ***with successful*** angioplasty and bi-pass surgery." *Record* at 19 (emphasis added). However, the opinion fails to discuss any medical evidence in connection with this finding and does not specify whether ALJ Cole is referring to the 1994 angioplasty and 1995 bypass surgery, *see Record* at 248, or whether he is referring to the

1997 angioplasty and 1995 bypass surgery.

I also recognize that ALJ Cole's analysis was specifically confined to the period from November 1997 to June 1999.  With the exception of Plaintiff's post-onset complaints of fatigue, however, the medical evidence cited by Plaintiff concerning his heart condition in support of meeting a listing occurred some two years prior to his November 1997 onset date.  *See Doc. 9* at 9-10.  Yet the only discussion of any "medical" evidence of Plaintiff's physical condition ALJ Cole cites in his decision appears in his discussion of Plaintiff's residual functional capacity.  The entire discussion is as follows:

> A medical report by [examining consulting physician] K.N. Kochukoshy, M.D. dated March 24, 1999 (Exhibit 6F) states that he did not get any history of any symptoms or any findings on physical examination that would preclude activities such as sitting, walking, lifting, bending, or handling.  Mr. Moya complained of chest pain as being "a little bit of pricking pain" that goes away by itself in about 30 minutes.  However, when he takes nitroglycerin for the pain, it relieves the discomfort in three to five minutes.  It was Dr. Kochukoshy's impression that the claimant did not get chest pain more than once a week.  [Dr. Kochukoshy] noted that the chest pains were probably musculoskeletal in origin, based on the claimant's description of the symptoms.
>
> A medical assessment of ability to do work related activities submitted by the claimant's legal representative (Exhibit 9F) and signed by the claimant's treating physician states that the claimant is too limited to perform sustained work activities.  However, Dr. Barren (sic) [Dr. Sharon Baron, Plaintiff's treating physician from the Veteran's Administration since 1994] **has not stated why** the claimant can only lift five pounds and stand and walk for only a total of five to ten minutes in an eight hour day.  Therefore, I have not given any weight to this report.
>
> It was the opinion of the state agency physician that the claimant is able to perform light work (Exhibit 4F).

*Record* at 21-22 (emphasis added); *see also id.* at 222.

Dr. Kochukoshy performed his examination in March 1999, just prior to the end of the insured period. At that time he found Plaintiff had normal pulses and a normal EKG. Dr. Kochukoshy also states that he had Plaintiff's records from the Veterans' Administration from 1996 forward and did reach some conclusions from those records that have bearing on a Listings and/or residual functional capacity analysis. *See Record* at 532. However, ALJ Cole's opinion does not mention those conclusions, much less discuss the medical evidence itself.[2] Consequently,

---

[2] Dr. Kochukoshy noted that those "records are replete with multiple documentation of the claimant not wanting to take his medications as prescribed and the pharmacy record . . . documenting that he was not taking the medications as he was supposed to, despite the claimant's claim that he was taking the medications." *Id.* at 533. The records also noted that as of October 1998, "the claimant was still smoking some and was not willing to quit." *Id.* at 534. Further, despite Plaintiff claiming that he no longer drinks alcohol, Dr. Kochukoshy noted that the December 1997 discharge summary stated the Plaintiff went through "what was, at that time, felt to be alcohol withdrawal while he was in the hospital." *Id.* The medical records support these observations. They also show that, after his surgery in 1997, Plaintiff's chest pain is controlled when Plaintiff takes his medication and while Plaintiff rejected cardiac rehabilitation he began walking for exercise and does better at walking if he uses his prescribed inhaler. *See e.g., Record* at 468 (12/8/97; "HABITS: ETOH which is positive now. He says he drinks on Fridays. He denies history of delirium tremens, withdrawal or seizures, but old chart speaks of withdrawal. Positive for tobacco"); *id.* at 470 (12/8/97; "Problem # 2: ETOH withdrawal. Patient had some trouble the first night after his initial catheter due to agitation and required multiple doses of Ativan to calm him. It was though at this time the patient may indeed be experiencing withdrawal symptoms."); *id.* at 494 (1/6/98; Plaintiff's complaints of chest pain assessed as "no clearly angina as only lasting few minutes and no other associated symptoms will try Tagamet regularly if persists") *id.* at 492 (2/10/98; Plaintiff's complaints of occasional chest pain after stent placed assessed as "for angina not clear if unstable as patient not being compliant with his meds. reiterated with patient the importance of taking his medications on a regular basis. will also schedule eet cardiolyte to further evaluate the patient's chest pain. this pain is relieved with 1 sl nitro and is described as different from the pain he has had thee in the past which was sharp and lasted only a few seconds"); *id.* at 491 (2/12/98) (radiology examination showed "a small area of mild reversible ischemia" and "a small myocardial infarction posterior lateral wall"); *id.* at 490 (2/17/98; "pt here for followup of persantine thal scan pt. reports no new chest pain since wearing nitro patch states he will not have surgery again even if test is positive . . . angina – improved now that pt. taking nitro patch in the day"); *id.* at 420 (3/5/98; Plaintiff files application for benefits); *id.* at 489 (3/31/98; "pt. complains of being chronically fatigued, can't walk even to va from parking lot without feeling tired . .. Pt. still reports having pressure left sided, relieved with sl nitro, as pt. is still refusing surgery will treat medically and increase nitro patch . .. Fatigue - unclear as to cause, recent echo showed preserved lv function, question if this is secondary to copd v. deconditioning vs. other. . . . also consider cardiac rehab in future pt. refuses for now"); *id*. at 487 (4/14/98; "pt denies any chest pain and states that his sob has improved on the albuterol inhaler however he still complains of feeling fatigued, pt. exercising 2 x per week walking from

I am faced with reasoning I cannot meaningfully review and, despite my obligation to review the entire record, cannot substitute my own conclusions about whether Plaintiff meets any Listing.

### B. The Sole Basis For Rejecting Dr. Baron's Opinion On Limitations Is Unsupportable

Plaintiff contends that the ALJ failed to give controlling weight to Dr. Baron's opinion about his limitations. Moya further argues that, based on Dr. Baron's opinion of his limitations, he is at best only capable of sedentary work and, therefore, is disabled under Grid § 201.14 and should be awarded benefits by this Court.

As emphasized above, the only basis given for rejecting Dr. Baron's opinion that Plaintiff can only walk or stand for a few minutes intermittently and cannot lift more than five pounds is that Dr. Baron purportedly did not "state why" he is so limited. A review of the form she submitted, however, plainly provides "angina, medical management of and poorly controlled" as the "medical findings that support" her assessment. *Record* at 544; *see also id.* at 543. As such, ALJ Cole did not set forth a "specific, legitimate reason" for not giving Dr. Baron's opinion controlling weight and further, did not consider any of the other relevant factors in deciding to reject the opinion. *See e.g., Drepeau,* 255 F.3d at 1213.

---

greigos to candelaria and back . . . fatigue - may be secondary to deconditioning vs. beta blocker. bp [ele?]vates to 80 with walking the halls 4 times therefore doubt beta blocker [havi?]ng great affect. consider if this may also be depression, pt. still reports occassional (sic) depression has flat affect and seems not to care"); *id.* at 479 (6/2/98; pt. denies chest pain. discussed compliance . . . it is obvious that he is not taking his meds as prescribed. . . discussed at length the repercussions of not taking his meds on a regular basis or at all"); *id.* at 477 (8/31/98; ("pt reports having angina about 4 times a week relieved by 2 sl nitro; doesn't know how to take the nitro . . . pt has been better about taking his meds still not perfect but a definate (sic) improvement"); *id*. at 478 (8/31/98; "pt does better walking if uses inhaler prior to exercise"); *id.* at 519-20 (10/20/98; "pt states that he is having anginal pain about 2-3 times a week happening when resting relieved with 1 sublingual nitro;" Plaintiff not taking his medications for angina, cholesterol and blood pressure; to check with "esr" re: Plaintiff's complaints of daily headaches); *id.* at 518 (11/4/98; evaluation of complaint of headaches not thought to be cluster or migraine; notes Plaintiff "drinks 1-2 cases beer/wk-mostly on weekends" and that his "gait difficulty and romberg felt to be 2 to et-oh. . . . feel depression and et-oh a significant component [of headaches]").

There may be, as Defendant suggests, a number of reasons to reject the opinion based on such factors. *See Doc. 12* at 8-9. Again, however, I cannot substitute my reasoning for that of the ALJ. Accordingly, I find this portion of the decision erroneous. Because rejection of Dr. Baron's opinion was integral to ALJ Cole's credibility and residual functional capacity findings, the ALJ must reconsider those portions of his opinion as well. Given this posture of the case, it would be inappropriate for me to simply accept Dr. Baron's opinion and award benefits on that basis under the Grids.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 8)* is GRANTED, and this matter is remanded to the Commissioner for further proceedings.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.